**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF MARYLAND**
SOUTHERN DIVISION
6411 IVY LANE, SUITE 710
GREENBELT, MARYLAND 20770
TEL: (301) 344-0600
FAX: (301) 344-0019

JAMES WYDA                                                    CARA KURTZ HALVERSON
FEDERAL PUBLIC DEFENDER                                       ASSISTANT FEDERAL PUBLIC DEFENDERS

April 23, 2024

____ FILED   ____ ENTERED
____ LOGGED  ____ RECEIVED

**Via CM/ECF**

JUL 2 2 2024

The Honorable Theodore D. Chuang
United States District Judge
United States District Court, Southern Division
6500 Cherrywood Lane
Greenbelt, Maryland 20770

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

Re:   *United States v. Rolando Escamilla-Romero*, No. TDC-22-393
      Notice of Intent to Plead Guilty Pursuant to FRCP Rule 11

Dear Judge Chaung,

Mr. Rolando Escamilla-Romero intends to plead guilty to a one-count Indictment (ECF No. 10), charging him with Reentry of an Alien Removed After Aggravated Felony Conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). Because the parties have not entered a plea agreement, this letter is meant to memorialize the factual basis for the plea and assist the Court in the Rule 11 colloquy, currently scheduled for July 22, 2024, at 2:30 pm.

## Offense of Conviction

1. Mr. Escamilla-Romero intends to plead guilty to Reentry of an Alien Removed After Aggravated Felony Conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). Mr. Escamilla-Romero admits that he is, in fact, guilty of this offense and he will so advise the Court.

## Elements of the Offenses

2. The elements of the offense to which Mr. Escamilla-Romero intends to plead guilty, and which the government would prove if the case went to trial, are as follows:

1

Reentry of an Alien Removed After Aggravated Felony Conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2)

That on or about the time alleged in the Indictment, in the District of Maryland,

  a.  Mr. Escamilla-Romero was an alien to the United States;

  b.  Prior to the time of the offense, Mr. Escamilla-Romero had been deported, excluded, or removed from the United States;

  c.  Thereafter Mr. Escamilla-Romero was found to be voluntarily in the United States; and

  d.  Mr. Escamilla-Romero had not received the express consent of the Attorney General of the United States or his successor, the Secretary for Homeland Security, to apply for readmission into the United States.

## **Penalties**

3.  The maximum sentence provided by statute for the offense to which Mr. Escamilla-Romero intends to plead guilty are as follows: a term of imprisonment of twenty years, a fine of $250,000, and a term of supervised release of three years. Mr. Escamilla-Romero understands that he must pay a $100 special assessment for his conviction, pursuant to 18 U.S.C. § 3013. Mr. Escamilla-Romero understands that if he is sentenced to a term of supervised release and then violates the conditions of supervised release, his supervised release could be revoked – including on the last day of the term – and Mr. Escamilla-Romero could be sentenced to new terms of incarceration and supervised release. Mr. Escamilla-Romero understands that, if he serves a term of imprisonment, the Bureau of Prisons has sole discretion in designating the institution at which he will be imprisoned.

## **Waiver of Rights**

4.  Mr. Escamilla-Romero understands that by pleading guilty, he surrenders certain rights as outlined below:

  a.  If Mr. Escamilla-Romero had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. A trial could also be conducted by a judge, without a jury, if Mr. Escamilla-Romero, the Government, and the Court all agreed.

  b.  If Mr. Escamilla-Romero elected a jury trial, the jury would be composed of twelve individuals selected from the community. Undersigned counsel and Mr. Escamilla-Romero would have the opportunity to challenge prospective jurors who demonstrated bias or were otherwise unqualified and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before

2

Mr. Escamilla-Romero could be found guilty of any count put before the jury. The Court would instruct the jury that Mr. Escamilla-Romero is presumed to be innocent, and that presumption can be overcome only by proof beyond a reasonable doubt.

c. If Mr. Escamilla-Romero went to trial, the Government would have the burden of proving Mr. Escamilla-Romero guilty beyond a reasonable doubt. Mr. Escamilla-Romero would have the right to confront and cross-examine the government's witnesses. Mr. Escamilla-Romero would not have to present any witnesses or evidence whatsoever. If Mr. Escamilla-Romero wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel witnesses to attend.

d. Mr. Escamilla-Romero would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that the jury could not draw any adverse inference from Mr. Escamilla-Romero's decision not to testify.

e. If Mr. Escamilla-Romero were found guilty following a trial, he would have the right to appeal the verdict and the Court's decisions regarding the admissibility of evidence to see whether any errors were committed that would require a new trial or dismissal of the charges against him.

f. By pleading guilty, Mr. Escamilla-Romero will be giving up all of these rights, except the right to appeal his sentence. By pleading guilty. Mr. Escamilla-Romero understands that he may have to answer the Court's questions about the rights he is giving up and the facts of his case. Any statements that Mr. Escamilla-Romero makes during such a hearing would not be admissible against him during a trial, except in a criminal proceeding for perjury or false statement.

g. If the Court accepts Mr. Escamilla-Romero's plea of guilty, there will be no trial and the Court will find him guilty.

h. By pleading guilty, Mr. Escamilla-Romero understands he will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. Mr. Escamilla-Romero recognizes that he is not a citizen of the United States, nor is he a naturalized citizen, and pleading guilty may have consequences with respect to his immigration status. Under federal law, a conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and Mr. Escamilla-Romero understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on his immigration status. Mr. Escamilla-Romero is not relying on any

3

promise or belief about the immigration consequences of pleading guilty, and nevertheless affirms that he wants to plead guilty, regardless of any potential immigration consequences.

## Sentencing Guidelines Apply

5. Mr. Escamilla-Romero understands that a sentencing guidelines range for this case (henceforth the "advisory guidelines range") will be determined by the Court, pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991-998. Mr. Escamilla-Romero further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a sufficient sentence.

## Factual Statement

6. Mr. Escamilla-Romero agrees that, if this case were to proceed to trial, the Government would prove beyond a reasonable doubt the following facts:

a. Mr. Escamilla-Romero is a citizen of El Salvador who first lawfully entered the United States as the Child of a Professional or Skilled Worker on June 6, 2003.

b. In 2008, Mr. Escamilla-Romero was convicted of Second-Degree Rape in Montgomery County, Maryland, and sentenced to 10 years' imprisonment with all but 5 years suspended. On August 6, 2009, ICE Officials encountered Mr. Escamilla-Romero, and due to the nature of his conviction, served him with a Notice to Appear before an Immigration Judge.

c. On November 18, 2009, an Immigration Judge in Baltimore, Maryland determined that Mr. Escamilla-Romero was subject to removal from the United States and ordered him removed.

d. On February 19, 2014, after the completion of his state sentence, Mr. Escamilla-Romero was removed from the United States to El Salvador. He was informed he could not reenter the United States without first applying to the Attorney General or Secretary of the Department of Homeland Security for permission to reapply for admission to the United States.

e. On April 16, 2015, Mr. Escamilla-Romero was found in Carrizo Springs, Texas by the United States Border Patrol after he illegally reentered the United States. On May 13, 2015, he was indicted by a federal grand jury in the Western District of Texas for illegally reentering the United States after being deported or removed following a felony conviction in violation of 18 U.S.C. § 1326. On March 3, 2016, Mr. Escamilla-Romero was convicted of that offense, and sentenced to 57 months incarceration, with credit for time served, and to a term of supervised release for three years.

4

    f. On October 28, 2019, after the completion of his federal sentence, Mr. Escamilla-Romero was again removed from the United States to El Salvador.

    g. Sometime after his 2019 removal, Mr. Escamilla-Romero again reentered the United States without inspection or permission.

    h. On September 15, 2022, federal officials received notification that Mr. Escamilla-Romero was arrested in Montgomery County, Maryland for a Violation of Probation.

    i. Mr. Escamilla-Romero had not received permission from the Attorney General or the Secretary of the Department of Homeland Security to reenter the United States.

### Advisory Sentencing Guidelines Factors

7. Mr. Escamilla-Romero respectfully submits that the following analysis applies:

    a. A base offense level of **8** applies, pursuant to U.S.S.G. § 2L1.2(a).

    b. Because Mr. Escamilla-Romero committed the instant offense after sustaining a conviction for a felony illegal reentry offense, a **4**-level upward adjustment applies, pursuant to U.S.S.G. § 2L1.2(b)(1)(A).

    c. Before Mr. Escamilla-Romero was ordered deported or removed from the United States the first time, he engaged in criminal conduct that resulted in a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was five years or more. Therefore, a **10**-level upward adjustment applies, pursuant to U.S.S.G. § 2L1.2(b)(2)(A).

    d. Mr. Escamilla-Romero believes that his total adjusted offense level is **22.**

    a. Based upon Mr. Escamilla-Romero's acceptance of responsibility for his criminal conduct, he may receive a **3**-level reduction in the base offense level pursuant to U.S.S.G. § 3E1.1(a) & (b).

    b. Thus, Mr. Escamilla-Romero submits that his final offense level is **19**.

8. Mr. Escamilla-Romero understands that his criminal history could alter his offense level and advisory guidelines range.

### Sentence Within the Discretion of the Court

9. Mr. Escamilla-Romero understands that under the current state of the law in the federal system, the sentence that will be imposed is within the sole discretion of the Court. Mr. Escamilla-Romero understands that the Court will, with the aid of a Presentence Report (PSR), determine the

facts relevant to sentencing. In determining the factual basis for the sentence, the Court will consider the above-stated factual stipulation, together with the results of the PSR and any other relevant information. Mr. Escamilla-Romero understands that the Court is under no obligation to accept any recommendation in regard to sentencing, and the Court has the power to impose a sentence up to and including the above-stated statutory maximum. Mr. Escamilla-Romero understands that if the Court should impose any sentence up to the statutory maximum, he cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to his guilty plea. Mr. Escamilla-Romero understands that neither the prosecutor, undersigned counsel, nor the Court can make a binding prediction, promise, or representation as to the advisory Guidelines range or the sentence that Mr. Escamilla-Romero will receive. Mr. Escamilla-Romero agrees that no one has made such a binding prediction or promise.

I, Rolando Escamilla-Romero, have carefully reviewed the contents of this letter with my attorney. I understand it. I voluntarily agree to it, and I do not wish to change any part of it. I am satisfied with the representation of my attorney.

_____4/25/24_____
Date

_____
Rolando Escamilla-Romero, Defendant

I have carefully reviewed the contents of this letter with Mr. Escamilla-Romero. He has advised me that he understands and willingly pleads guilty. To my knowledge, his decision is informed and voluntary.

_____4/25/24_____
Date

_____
Cara Halverson, Assistant Federal Public Defender

cc:     Adam Ake, Assistant United States Attorney
        Joel Crespo, Assistant United States Attorney